## Pike County v. Sowards, et al.

(Decided February 20, 1912.)

### Appeal from Pike Circuit Court.

1.  Alteration in an Instrument—Absence of Proof—Presumption.—
    It is presumed in the absence of proof to the contrary that an

alteration in an instrument apparent on its face, was made before delivery.

2. Deed—Liability—Good Faith.—A deed made pursuant to a title bond acquired before the liability was created is not fraudulent. Nor is a deed fraudulent where the transaction was in good faith and had before the liability was fixed on the debtor.

3. Debtor—Exemptions—Housekeeper.—The debtor is entitled to his exemptions as against a debt due the county and the county cannot complain of a sale by an attorney of his law library worth less than $500, he being a bona fide housekeeper with a family.

4. Purchase of Property—Intended Fraud.—A purchase of property at its full value will not be held fraudulent unless it is shown that fraud was intended.

5. Homestead—Conveyance by Debtor.—The county cannot complain of a conveyance by a debtor of his homestead or in satisfaction of the purchase money notes on it to the value of the property.

6. Employer and Employe—Payment in Advance.—An employer has the right to pay his employee in advance and the chancellor will not prevent him from so doing in order that the employees earnings may be subjected to his debts.

7. Husband and Wife—Rights of Creditors.—A creditor cannot require a husband to renounce his wife's will and the husband takes only under the statute although the wife may devise him nothing by her will.

JAMES M. ROBERSON and J. J. MOORE for appellant.

YORK & JOHNSON and HAGER & STUART for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

James Sowards was county attorney of Pike County for the term expiring on the first Monday in January, 1902, and during his term of office collected certain taxes due the county. After his term expired and on April 12, 1902, an action was brought by the county against him to recover therefor. The circuit court dismissed the petition but on appeal to this court the judgment was reversed, and on the return of the case from this court at the February term, 1908, a judgment was rendered in favor of the plaintiff against him for $3,-951.36, with interest from April 12, 1902, and cost. An execution issued on the judgment which was returned no property found. Thereupon this suit was brought by the county against him and his wife, Hester A. Sowards, and the Northern Coal and Coke Company to enforce satisfaction of the judgment under section 439 of the Code.

The circuit court on final hearing of the case dismissed the petition, and the plaintiff appeals.

It was charged in the petition that James Sowards had conveyed and caused to be conveyed to his wife, Hester A. Sowards, certain property without valuable consideration and for the fraudulent purpose of cheating and defrauding Pike County. The transactions which are assailed are as follows:

1. On March 26th, 1902, James Damron and wife conveyed to Hester A. Sowards, 120 acres of land and on May 20, 1903, a deed from M. D. Damron and wife and James M. York, as executor, was executed to her to confirm the previous deed. The deed of March 26, 1902, was executed before any suit had been brought by the county against James Sowards, but it was executed after his term of office had expired, and after there had been some agitation in regard to a suit against him by the county. The defendants, however, showed that these deeds were made pursuant to a title bond which Hester A. Sowards had acquired by assignment from Miles Coleman on February 10, 1900, or two years before there was any agitation about a liability of James Sowards to the county. It is insisted for the county that the assignment was really made to James Sowards and that the bond had been changed so that the deed might be made to Hester A. Sowards. The original paper has been brought up for our inspection and while there is some evidence on the face of the paper that a ''J'' has been changed to an ''H'' there is nothing in the evidence to show when this change was made. We can not assume that a forgery was committed without proof. The presumption is that the change was made before the delivery of the document. (1 Greenleaf on Evidence, section 564, James v. Holdam, 142 Ky., 450, and cases cited.)

The deed to Mrs. Sowards pursuant to the bond was made before any suit was brought against her husband for the money, and in the absence of some evidence to show a fraudulent alteration of the bond, the circuit court properly refused to hold the deed fraudulent.

2. On May 2, 1902, a commissioner's deed was made to Mrs. Sowards for an interest in the Corley Smith survey which had been bid in at the commissioner's sale by James Sowards and assigned by him to his wife. He had bought a half interest, the whole property selling for $12. The deed was made a few days after the suit was brought against him by the county, but he had previously

assigned the bond to his wife and we can not believe that this $6 transaction was made with a view of cheating and defrauding his creditors. He testified that he bought the land in for his wife, and that the assignment was made to correct the mistake of the commissioner in reporting him as the purchaser. There is no contrary evidence. It is said that he is not a competent witness, but he is one of the parties to the action. This is an action which might been brought by or against the wife, if she had been unmarried, and in such an action either but not both of them may testify. (Civil Code, section 606.) She did not testify.

3. By a deed dated December 23, 1902, he conveyed to his wife his law library, and it is insisted that this was fraudulent. But he was a bona fide housekeeper with a family. By section 1700, Kentucky Statutes, professional libraries of attorneys at law, not exceeding in value, $500, are exempt from execution. Under the undisputed evidence the library was of less value than $500 and the county can not complain of the conveyance as fraudulent if the property was exempt from execution. It is insisted, however, that the exemption laws do not apply to the tax dues of the State, and that the county being but an arm of the State government, the same rule should apply here. We do not find in the statute any provision exempting counties or other municipalities from its operation, and to say that debts held by municipalities are privileged, would be to make an exception to the statute which would greatly impair its efficacy. The purpose of the statute is not to protect the debtor but to protect the family, and to effectuate this purpose it is as necessary to protect the family from debts due to municipalities as to other debtors. (Commonwealth v. Lay, 12 Bush, 285; Central Ky. Lunatic Asylum v. Craven, 28 Ky., 105, 21 Cyc., 519; Thompson on Homestead, section 386.)

4. On July 16, 1903, James Sowards conveyed to his wife a one-half interest in 50 acres of land on Burning Fork of Raccoon Creek for $100 cash then paid by her. The amount she paid for the property appears to have been more than its value. While the deed was made after the suit was brought against her husband, it was made when he was defending the action and some five years before any judgment was rendered against him. In view of the amount of the consideration and the other circumstances of the transaction we conclude that the

court properly declined to hold the transaction fraudulent.

5. On January 9, 1904, James Sowards conveyed to Hester Sowards a one-half interest in what was known as the stable lot. He and his wife had purchased this property jointly some years before and she then paid him $225, the full value of his half interest. This deed was also made when there was no judgment against him, when he was making a vigorous defense against the claim of the county and four years before any judgment was rendered. She having paid full value for the property the court properly refused to hold the conveyance fraudulent.

6. On April 20, 1907, James Sowards conveyed to his wife the house and lot where they then lived for $2,250, which was the full value of the property. She held a purchase money lien against the property for $1,250, and if this lien was valid, the county can not complain of the conveyance, as he was entitled to a homestead of $1,000 in the property. It is undisputed that the purchase money notes for the property were outstanding, but it is insisted that the assignments on the notes by which they were assigned to Hester A. Sowards, had been mutilated, and that these assignments were not made to her. We have examined the notes which have been brought up for our inspection, and find that the assignments do bear evidence of having been changed; but the notes were executed by James Sowards to Mrs. Mary K. Salyer and were assigned by her. If James A. Sowards had paid off the notes to Mrs. Salyer there was no need that an assignment to anybody should be placed on the back of them. In addition to this, it is proved by the testimony of the banker that in the transaction in which Mrs. Salyer assigned these notes, Mrs. Sowards transferred to Mrs. Salyer five shares of bank stock which she then held which were of value about the face of the notes. There is also proof that Mrs. Sowards kept her papers in the safe of her brother, and that years before there was any trouble between her husband and the county, these notes were in the safe with her papers. We, therefore, conclude that the circuit court properly held that she had a lien on the property for the amount of her notes, and that the defendant being entitled to a homestead in the property, the county can not complain of the transaction.

7. Mrs. Sowards is a daughter of A. J. Auxier, late

circuit judge of that district. She received from the estate of her father and of a deceased brother between July 18, 1901, and April 8, 1908, $5,056.99. She also taught school and did other work from which she had money on her own account. The amount of her earnings is not shown, but that she had money of her own is evident because she kept a bank account in her own name from August 1, 1892, until her death during the pendency of this action; and while her deposits were not large until she began to receive the money from her father's estate, they are sufficient to show that she had the means necessary to make the purchase she is shown to have made previous to the year 1901. After the conveyance to her of the house and lot where they lived, she had the cottage that was then on the lot moved to another lot, and erected on this lot a new residence which cost about $7,000, and it is insisted that James Sowards' money went into this house. On the other hand, the proof for her is to the effect that she used in building this house, the money she had and then borrowed from John C. Mayo, who is her cousin, $4,500, and put it in the house. We can not say upon the whole record that the circuit court erred in finding that the facts were as shown by the proof for her, and if this proof is true, he did not err in refusing to subject the property to the county debt, as there was not enough evidence to show that James Sowards had put any of his money in the new house.

8. James Sowards was working for the Northern Coal and Coke Company. The plaintiff served an attachment on the Northern Coal and Coke Company. The company answered as garnishee that it did not owe him anything. An alias attachment was issued and the same answer again filed. The plaintiff then filed an amended petition in which it was alleged that the Northern Coal and Coke Company had fraudulently conspired with the defendant for the purpose of cheating and delaying the plaintiff in the collection of its debt, and with this view was employing James A Sowards at $100 a month and paying him his salary monthly in advance to prevent its being subjected by the plaintiff in this case. The circuit court dismissed the petition against the Northern Coal and Coke Company holding that it had the right to pay Sowards the wages and that the court had no control of the matter. This ruling followed Baird v. Deitz, 11 R., 759. The court can not compel the debtor to work, and

it can not compel the Northern Coal and Coke Company to employ him. It has the right to employ him on such terms as they may agree upon. The employer has a right to pay his hands daily in advance if he sees proper to do so and to restrain this right would be an undue interference of the right to contract. If an employer can only obtain labor by paying in advance for it, we know of no rule of law which would prevent him from carrying on his business in this way. It is true that under section 439 of the Code, any property, or interest in property or equitable or legal right to which the defendant is entitled may be subjected, but James Sowards has no interest legal or equitable in any money in the hands of the coal company. It does not owe him anything. On the contrary under the evidence he owes it and the company allows him to stay in debt to it as is alleged, in order to prevent the county from subjecting his earnings. We do not see how one creditor of Sowards can complain that another gives him credit. The case would not be essentially different if it was averred that the coal company from time to time lent Sowards $100, and allowed him to work it out at $100 a month.

10. Hester A. Sowards left a will by which she devised all of her property to her two children leaving nothing to her husband. The county by an amended petition undertook to subject the interest which James Sowards, as her surviving husband, would take in her estate under section 2132, Kentucky Statutes, if she had left no will, or if Sowards had renounced the will. In Bains v. Globe Bank and Trust Co., 136 Ky., 332, we held that a married woman may dispose of her property by will; that the husband may elect to take under the statute and not under the will; but that his creditors can not complain of his election to take under the will or compel him to exercise his election to take under the statute. We adhere to the rule laid down in that case, and we do not see that it is a material circumstance that the will makes no provision for the husband. The husband is bound by the will unless he elects to take under the statute, and this is a personal privilege which the creditors can not compel him to exercise. On the whole case we see no substantial error in the judgment.

Judgment affirmed.

Whole court sitting.