### Florence et al. v. Dunagan et al.

Dec. 15, 1939.

26

J. B. Paxton for appellants.

W. H. W. Reynolds and Kelly J. Francis for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellants and plaintiffs below recovered a judgment against the appellees and defendants below in the Lincoln circuit court at its regular November term, 1937, for the total sum of $1,927.01. Plaintiffs' debt that was merged in the judgment was contracted and created prior to the acquisition of a farm in Lincoln County by defendant, W. L. Dunagan, containing 137½ acres. After acquiring it, and after creating plaintiff's debt, he, with his wife, Mary Lou Dunagan, mortgaged it to the North Life Insurance Company to secure a debt of $6,000 evidenced by notes extending over a long period. Suit was brought by the company to collect the balance due on its debt and to enforce the mortgage, but in the meantime Mrs. Dunagan became of unsound mind and was adjudged to be so and the appointment of a committee for her was made. She was, therefore, incapable at the time of the foreclosure proceedings to execute any contract through and by which the debt due the insurance company might be refinanced.

Dunagan and his wife had reared a young man in the neighborhood by the name of Shelby Lutes, and in the circumstances it was agreed between the husband, W. L. Dunagan, and Lutes, that a judgment for the sale of the mortgaged farm might be entered and it sold by

the commissioner at which Lutes (who possessed no property whatever) would purchase it in his name and later, after obtaining deed thereto, refinance the debt by giving a lien to a new creditor for an amount sufficient for that purpose; or sell a sufficient amount of the farm to liquidate the judgment of the insurance company and hold the balance for the use and benefit of William L. Dunagan. The parol agreement was carried out and Lutes became the purchaser at the decretal sale. Upon his bid being accepted by the commissioner it became necessary for him to execute sale bonds as directed by the judgment. He procured one F. Lee Hill and one C. C. Perkins, to become his sureties on his sale bonds upon condition that if they were compelled to pay and satisfy the bonds, then Lutes would assign his purchase to them with the privilege of refunding to them the amount they had paid, and if done within a year "then they will reconvey said farm to said William L. Dunagan." A written contract was entered into on the 17th day of August, 1934, to that effect, which was signed by W. L. Dunagan, Shelby Lutes, F. Lee Hill and C. C. Perkins. After procuring the commissioner's deed, following the agreements and contracts as outlined, Lutes—with possibly the assistance of Dunagan—liquidated the entire indebtedness represented by the judgment of the insurance company by selling and conveying 78.18 acres of the farm, leaving a balance of 67.05 acres unencumbered, but the title to which continued in Lutes as the nominal decretal purchaser.

Plaintiffs and appellants raised execution on their judgment and placed it in the hands of the sheriff of Lincoln County who returned it "no property found." They thereupon instituted against defendants and appellees this equity action in the nature of a Bill of Discovery—as is provided by Section 439 of our Civil Code of Practice—and which action the section expressly prescribes may be employed for the discovery and appropriation by the creditor "of any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled, and for subjecting the same to the satisfaction of the judgment; and in such actions, persons indebted to the defendant, or holding money or property in which he has an interest, or holding evidences or securities for the same, may be also made defendants."

In their petition plaintiffs averred the facts we have

related, but in greater detail, bringing into the case the written agreement referred to by an amended petition. Prior to the filing of that amendment the court sustained a demurrer filed to the original petition by Lutes, but upon what ground the record does not disclose, since the court filed no opinion, but possibly it was because the court concluded that plaintiffs had failed to aver an enforceable trust against Lutes, there being no writing brought forward up to that time evidencing such a trust. At any rate, the amended petition disclosed such a writing and inserted it verbatim as a part of it. However, the court sustained the demurrer filed by Lutes to the petition as so amended, but again delivered no opinion, or if one, it was not made a part of the record and brought here.

In the meantime it is disclosed by the record that Dunagan and his wife's committee filed a pleading which is referred to in the record as "answer, counterclaim and cross petition," to which Lutes appears to have filed a general demurrer which the court overruled, the order reciting: "and he is given leave and time to file his answer and plead further hereto." We know nothing of what was contained in that pleading to which he was given leave to respond, since it is not made a part of the record and the questions it raised appear to have been deferred and not decided. After the court sustained the demurrer filed by Lutes to plaintiffs' petition they declined to plead further as against him and their cause of action seeking to appropriate to the payment of their judgment the balance of the farm to which he held title as trustee for Dunagan, the plaintiffs' debtor, was dismissed, to reverse which they prosecute this appeal.

As said, neither the record nor briefs of counsel disclose the ground, or grounds, upon which the court sustained the demurrers referred to, and if the first one was based upon the surmised ground above pointed out, i. e. parol trust concerning real estate, and if that ground was well taken (a question we need not here decide), it was removed upon the filing of the amended petition, whereby it was pointed out that the original parol trust was reduced to writing and signed by all parties interested in the subject matter.

Counsel for Lutes on this appeal cite us to the cases of Leitchfield Milling Company v. Rogers, 239 Ky.

481, 39 S W. (2d) 961; Wittenauer v. Kaelin, 228 Ky. 679, 15 S. W. (2d) 461, and Pike County v. Sowards, 147 Ky. 37, 143 S. W. 745, as sustaining the judgment appealed from, but in neither of them was there any involved property, or interest of the debtor that an action like this could reach under the provisions of the section of the Code supra, authorizing it. In neither of them was involved any chose in action, or any equitable or legal interest, or any property right to which the debtor was entitled that might be subjected to the payment of plaintiffs' debt. Two of them (The Pike County and Wittenauer cases) sought to reach defendant's right to maintain a tort action but which we held was not comprehended by the section of the Code supra, as being a claim that might be reached or appropriated by this authorized action; whilst the Leitchfield Milling Company case was where the plaintiff debtor sought to appropriate enhanced value of real estate after his alleged fraudulent conveyance of it to another, which was held invested no interest in him, and, consequently, could not be reached by his creditor. Those cases are far afield from the one presented by the facts of this case, as alleged by plaintiffs in their petition as amended and which facts were admitted by the demurrers filed thereto.

Here we have a writing, duly executed by the trustee and the owner of the property, whereby the former agrees to hold the title to the property sought to be appropriated for the use and benefit of the latter, and which he was doing at the time this action was filed. It created in the cestui que trust (Dunagan) an enforceable contractual right against his trustee and made him the equitable title holder of the property sought to be subjected, which right is specifically mentioned in the section of the Code supra as being one that the action therein provided for could reach. See the text in 8 R. C. L. page 9, Section 7; 15 C. J. 1406, Section 89, and the cases of Farmers Bank v. Morris, 79 Ky. 157; Brackett's Adm'r v. Boreing's Adm'r, 131 Ky. 751, 110 S. W. 276, 115 S. W. 766, 33 Ky. Law Rep. 292; Merriwether v. Bell, 139 Ky. 402, 58 S. W. 987, 22 Ky. Law Rep. 844, and Landy v. Moritz, 109 S. W. 897, 33 Ky. Law Rep. 223. The cited cases and texts clearly hold that whatever else may be subjected by a creditor in this character of action it is certain that enforceable contractual rights, creating vested property interest in the debtor,

may be reached and appropriated by the creditor and which is especially true with reference to enforceable trust agreements wherein the debtor is the owner of the equitable title to the property sought to be subjected.

Whether or not the debtor, Dunagan, in this case, or his wife has any defense to the prima facie cause of action set forth in plaintiff's pleadings, we know not; but, admitting the facts as averred in those pleadings— which the demurrer filed by Lutes did—we unhesitatingly conclude that the court was in error in sustaining his demurrer and in dismissing plaintiffs' action against the trustee upon their failing to plead further.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and to overrule the demurrer filed by Lutes to plaintiffs' petition as amended, and for other proceedings not inconsistent with this opinion.